KENDRA S. CANAPE (SBN: 259641)
kcanape@grsm.com
JOEL D. BRODFUEHRER (SBN: 343092)
jbrodfuehrer@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614
Telephone: (949) 255-6950
Facsimile: (949) 474-2060

Attorneys for Defendant
**IQ DATA INTERNATIONAL, INC.**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MONIQUE HESSELBROCK, an Individual;

Plaintiff,

vs.

I.Q. DATA SYSTEMS, is a business entity; EQUIFAX INFORMATION SERVICES, LLC, is a business entity; and DOES 1-25, Inclusive,

Defendants.

No.: 2:23-cv-02169-FLA (PVCx)

**DEFENDANT IQ DATA INTERNATIONAL, INC.'S MOTION TO STRIKE PLAINTIFF'S EXPERT DESIGNATION AND REPORTS**

**DATE:** June 7, 2024
**TIME:** 1:30 p.m.
**COURTROOM:** 6B

Judge: Hon. Fernando L. Aenlle-Rocha

Complaint Filed: 3/23/23
FAC Filed: 3/31/23

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 5

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 5

III. THOMAS A. TARTER'S IMPROPER EXPERT CONCLUSIONS AND STATEMENTS ..... 7

- A. Tarter's Improper Legal Conclusions and Conclusions Made With Lack of Knowledge ..... 7
- B. Tarter's Baseless Damages Conclusions ..... 10
- C. Undisclosed Records ..... 12
- D. Tarter's Supplemental Report ..... 12

IV. LEGAL ANALYSIS ..... 12

- A. Tarter's Report should be stricken for failure to comply with FRCP 26(a)(2) ..... 12
- B. Tarter's Entire Report Should be Stricken for the Inclusion of Numerous Improper Legal Conclusions and Assumptions Without Factual Proof. ..... 14
- C. Tarter's Opinions Concerning Damages are Inadmissible. ..... 16
- D. Tarter's Supplemental Report and Disclosures Are Still Deficient. ..... 17
- E. Tarter has been excluded for similar reasons before. ..... 18

V. CONCLUSION ..... 18

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. MediaPointe, Inc.*,
No. 222CV06233MCSSHKX, 2024 WL 608015 (C.D. Cal. Jan. 3, 2024)..... 13

*Anderson v. Wells Fargo Bank, N.A.*,
No. 3:16-CV-2514-N, 2018 WL 3426269 (N.D. Tex. July 13, 2018)............ 18

*Daubert v. Merrell Dow Pharms. Inc.*,
509 U.S. 579 (1993) ........................................................................ 13, 16

*David v. Caterpillar, Inc.*,
324 F.3d 851 (7th Cir. 2003)................................................................. 13

*Gunaratna v. Dennis Gross Cosmetology LLC*,
2023 WL 2628620 (C.D. Cal. Mar. 15, 2023) ........................................ 16

*Houle v. Jubilee Fisheries, Inc.*,
No. C04-2346JLR, 2006 WL 27204 (W.D. Wash. Jan. 5, 2006) .................... 13

*Keshish v. Allstate Ins. Co.*,
959 F. Supp. 2d 1226 (C.D. Cal. 2013).................................................. 15

*Lanard Toys, Ltd. v. Novelty, Inc.*,
375 Fed. Appx. 705 (9th Cir. 2010) ...................................................... 13

*Lee v. First Nat'l Ins. Co.*,
No. CV0906264MMMCWX, 2010 WL 11549637 (C.D. Cal. Dec. 22, 2010)....................................................................................................... 14

*Lust v. Merrell Dow Pharm., Inc.*,
89 F.3d 594 (9th Cir. 1996)..................................................................... 14

*Elsayed Mukhtar v. Cal. State Univ., Hayward*,

299 F.3d at 1053, 1066 n.10 (9th Cir. 2002).............................................. 14

*Nationwide v. Kass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008)................................................................. 14

*Schoendorf v. Baker*,
No. CV-03-461-RHW, 2005 WL 8158643 (E.D. Wash. Feb. 17, 2005)......... 18

*Snyder v. Bank of Am., N.A.*,
No. 15-CV-04228-KAW, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020)......... 18

*Spintouch Inc. v. Outform, Inc.*,
2022 WL 17363902 (C.D. Sept. 28, 2022) .................................................... 16

*Syneron Med. Ltd. v. Invasix, Inc.*,
No. 816CV00143DOCKES, 2018 WL 4696969 (C.D. Cal. Aug. 27, 2018), report and recommendation adopted, No. SACV160143DOCKESX, 2018 WL 11351325 (C.D. Cal. Sept. 28, 2018) ....................................................... 13, 16

*Torres v. City of Los Angeles*,
548 F.3d 1197 (9th Cir. 2008)........................................................................ 13

*United States v. Gadson*,
763 F.3d 1189 (9th Cir. 2014)........................................................................ 16

*United States v. Weitzenhoff*,
35 F.3d 1275 (9th Cir. 1993).......................................................................... 15

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 5148390 (N.D. Cal. Nov. 6, 2017).................................................. 16

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001)................................................................... 12, 13

**Rules**

Fed. R. Civ. P. 26 ......................................................................................... 12, 18

Fed. R. Civ. P. 26(a)(2) ........................................................................................ 5

Fed. R. Civ. P. 26(a)(2)(B)................................................................................. 12

Fed. R. Civ. P. 26 (a)(2)(B)(iii)........................................................................... 17

Fed. R. Civ. P. 37 ......................................................................................... 12, 17

Fed. R. Civ. P. 37(c)(1) ............................................................................ 5, 12, 13

Fed. R. Evid. 702.................................................................................... 5, 13, 18

**Other Authorities**

Charles A. Wright et al., FED. PRAC. & PROC. EVID. § 6265.2 (2d ed.)........ 14

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

IQ Data International, Inc. ("IQ Data), hereby submits this Motion to Strike (the "Motion") requesting that this Court strike Plaintiff Monique Hesselbrock's ("Plaintiff") purported expert report authored by Thomas A. Tarter (the "original report") as well as his supplemental expert report dated April 29, 2024 (the "supplemental report") (collectively, "the reports").

## I. <u>INTRODUCTION</u>

Plaintiff's expert, Thomas Tarter, claims to be a banking expert witness and a financial and management consultant. Tarter sates he was hired by Plaintiff to formulate opinions on credit reporting practices, debt collection practices, the FCRA, FDCPA, credit industry standards, and on credit damages caused by IQ Data. Tarter's expert report is riddled with improper conclusions and opinions, which are disguised as, but also often-times, blatant legal and medical statements. Because Tarter's report is fundamentally and flawed and unreliable due to these improper opinions and conclusions, which are deeply intertwined throughout his entire analysis and opinions, the report should be excluded.

Tarter's report includes opinions that are not his own—including direct notes from Plaintiff about what to include in the report—and fails to include any disclosures regarding the documents he purportedly relied upon. Indeed, Tarter even concedes these violations with the disclosure of his supplemental report, which outlines various deletions that he would like to make. Both reports should be struck for failure to comply in its entirety pursuant to FRCP 37(c)(1) for failing to comply with FRCP 26(a)(2). Additionally, under the principles set forth in *Daubert* and 702 of the Federal Rules of Evidence, Tarter's opinions should be excluded.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

This matter stems from a simple debt collection related to Plaintiff's unpaid utility bills, totaling $81.54. After Plaintiff moved out of her apartment on July 30, 2021, she failed to pay for her July utility bills. Plaintiff now brings the

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

following action against IQ Data, alleging violations of the Fair Credit Reporting Act ("FCRA"), Federal and California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), and the California Consumer Credit Reporting Agencies Act ("CCCRA").

On April 12, 2024, the date Plaintiff's expert disclosure was due, Plaintiff disclosed her expert designation which included: (1) a "final" report authored by Thomas A. Tarter; (2) Tarter's curriculum vitae; (3) Tarter's case log; and (4) a two-page pdf scan of a document labeled "Data Accuracy." *See* Declaration of Joel D. Brodfuehrer ("Decl. Brodfuehrer"), ¶¶ 3-6, *Exhibits A-D*. Plaintiff did not produce any additional documents. The report also specifically titled "SUPPLEMENTAL EXPERT REPORT," and includes two electronic sticky notes on Page 16 of the report, which were authored by Plaintiff herself, not her attorney, on January 17, 2024, almost three months prior to the disclosure. Upon information and belief, Tarter made changes to the first draft of the report based on Plaintiff's comments.

Counsel for IQ Data requested a meet and confer with Plaintiff's counsel and sent emails identifying the issues it had with Plaintiff's expert disclosure. *Decl. Brodfuehrer*, ¶ 7. IQ Data also requested copies of all prior versions of Tarter's report, which were responsive to IQ Data's Requests for Production. *Decl. Brodfuehrer*, ¶ 9, *exhibit E*. On April 30, 2024, counsel for IQ Data conferred with Plaintiff over the phone. IQ Data requested that Plaintiff withdraw the expert report and suggested the parties proceed without experts. Plaintiff's counsel did not agree and also denied that there were prior versions of the report, despite the title of the report and the sticky notes that were left on the report that was produced. *Decl. Brodfuehrer*, ¶ 10. Counsel for IQ Data informed Plaintiff that it intended to file a motion to strike the expert report and a motion for summary judgment. *Id*.

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

On May 1, 2024, Plaintiff's counsel produced a supplemental report, a declaration referenced in Tarter's original report, and a word document which included various internet links that Tarter purportedly relied on. *Decl. Brodfuehrer*, ¶¶ 11-13, *Exhibits F-H*. Along with this supplemental production, Plaintiff's counsel also stated that no other versions of the report existed and that the report noted as "SUPPLEMENTAL EXPERT REPORT" was labeled in error. *Decl. Brodfuehrer*, ¶ 14, *Exhibit I*. Specifically, Plaintiff's counsel stated: "Mr. Tarter's earlier report was his report. The inclusion of the word 'supplemental' in the original report was a mistake." *Id.*

The digital sticky notes on the report support that there were in fact prior versions of the expert report. Upon information and belief, Plaintiff's counsel lied about there not being prior versions of the report. *See Exhibit A* page 16; *Decl. Brodfuehrer*, ¶ 15. The electronic sticky notes authored by Plaintiff on January 17, 2024 at 9:05 p.m., state: "Please check this last sentence regarding documents provided." Plaintiff also noted the following: "I did not claim identity theft. I filed a credit reporting and debt collection complaint with the Consumer Financial Protection Bureau (CFPB)." *Exhibit A*, p. 16. It is clear a prior version was sent to Plaintiff for review and comment, yet counsel denies there was ever a prior version of the report.

## III. <u>THOMAS A. TARTER'S IMPROPER EXPERT CONCLUSIONS AND STATEMENTS</u>

Tarter's original report contains legal conclusions and opinions on damages which he is unqualified to render. Tarter lacks the requisite knowledge to jump to the conclusions made in his report. Most of Tarter's report appears to be allegations copied and pasted from Plaintiff's own Complaint.

### A. Tarter's Improper Legal Conclusions and Conclusions Made With Lack of Knowledge

- IQ Data's "materially inaccurate and materially misleading, negative

PARK PLACE trade line reporting violated the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Act ("FDCA")." *Exhibit A*, p. 3.

- "By I.Q. DATA's failing to verify the alleged debt within 30 days after receiving notice of [Plaintiff]'s dispute, thereby violating the Fair Credit Reporting Act("FCRA")." *Id.* at 3.
- "IQ Data fail[ed] to verify the alleged debt . . ." *Id.* at 3.
- "IQ Data[] fail[ed] to comply with the Michigan Landlord Tennant Act." *Id.* at 4.
- The Utilities Ledger "mysteriously appeared only after ***we*** had commenced litigation." *Id.* at 17 (emphasis added).
- "This Report addresses how I.Q. DATA's false and inaccurate trade line reporting for [Plaintiff] adversely affected her ability to obtain credit" *Id.*
- "Consistent with credit, debt buyer and debt collection industry standards, I.Q. DATA had the duty and the obligation, upon receiving notice from [Plaintiff], to thoroughly investigate and even re-investigate [Plaintiff]'s dispute. I.Q. DATA also had the duty and obligation to take all necessary steps to clean up inaccurate reporting on [Plaintiff]. This would include but not be limited to management and senior personnel stepping-in to get the erroneous reporting corrected." *Id.* at 19.
- "in my opinion, I.Q. DATA, either knew or should have known, that if it violated industry standards by incorrectly reporting [Plaintiff]'s PARK PLACE trade line, it was highly likely and foreseeable that [Plaintiff] would be harmed (damaged), including but not limited to, by a lower credit score." *Id.* at 21.
- "I.Q. DATA was not FCRA Compliant." *Id.* at 24.
- "I.Q. DATA's conduct can no longer be considered merely negligent. After 90 days have passed, the issues of a callous, reckless disregard for [Plaintiff]'s rights under the FCRA was certainly raised." *Id.*

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

- "A conclusion I have drawn from the Documents I have reviewed is that I.Q. DATA failed to comply with the FCRA and violated industry custom, standards, and practices relative to [Plaintiff]'s trade line." *Id.*
- "it appears that I.Q. DATA was in violation of credit industry practices, regulatory guidelines and standards, as well as the FCRA." *Id.*
- "I.Q. DATA's Investigations Were Not Commercially Reasonable" *Id.* at 25.
- "It is the industry standard to complete a Fair Credit Reporting Act investigation, or reinvestigation, within 30 days of the consumer's dispute. There is no provision for waiting a year to complete an investigation." *Id.* at 26.
- "This by itself renders IQ's investigation unreasonable." *Id.* at 27.
- "By operation of the Michigan Landlord-Tenant Act, the alleged debt was extinguished by JRK's and I.Q. DATA's failure to provide the accounting within the required time period, and inquiry into the operation of both sections 9 and 10 of the Act should have been a part of any reasonable reinvestigation." *Id.* at 30.
- "By not correcting [Plaintiff]'s trade line credit reporting for more than a year, has led me to conclude that I.Q. Data's conduct rises to the level of a willful violation." *Id.*
- "in my opinion, I.Q. DATA, either knew or should have known, that: (i) it violated industry standards; and that (ii) it was, with a high degree of commercial certainty, foreseeable that [Plaintiff] would be harmed (damaged) by I.Q. DATA's inaccurate credit reporting." *Id.* at 31.
- "Consequently, false, materially inaccurate and significantly misleading unpaid collection account trade line information is detrimental to any affected consumer, as it was in this case to [Plaintiff]." *Id.* at 32.

- "I.Q. DATA materially misrepresented a trade line account as being unpaid and in collection." *Id.* at 34.
- "Had a responsible human being with independent judgment reviewed the available information supplied by [Plaintiff], in my opinion, this entire matter could have been resolved rapidly and without the need for litigation." *Id.* at 40.
- "The credit reporting and debt collection actions of I.Q. DATA have the appearance of being willful, knowing and intentionally committed in conscious disregard for the rights of [Plaintiff]." *Id.*
- "Was I.Q. DATA FCRA compliant? No." *Id.*
- "Was I.Q. DATA Fair Debt Collection Act compliant? No." *Id.* at 41.

**B. Tarter's Baseless Damages Conclusions**

- IQ Data's actions "resulted in economic and non-economic damages" to Plaintiff. *Id.* at 3.
- "The emotional side of credit loss may be measured in terms of the loss of enjoyment of life." *Id.* at 18.
- "Economic and financial professionals have long agreed that the quality of life is important." *Id.* at 19.
- "It is a case of endurance and perseverance, on how challenging and frustrating it was for [Plaintiff] to identify I.Q. DATA as the reason why *he* was denied credit. And then to have to hire an attorney to help *him*[sic] resolve *his*[sic] nightmare with I.Q. DATA." *Id.* at 23.
- "[Plaintiff] has asserted damages which included: chilling, anxiety, embarrassment, loss of sleep, headaches and the time required to correct I.Q. DATA's inaccurate (negative) reporting directly impacted her quality of life." *Id.* at 31.
- "The credit damage remedy process also takes a toll on the victims (like [Plaintiff]) because of the effect that it has on the quality of their lives, the

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

loss of the ability of having a normal life for other personal, family and household purposes; and instead, their public and social image is tainted as well as their ability to recover from negative credit events by being denied access to credit. This happened to [Plaintiff] because I.Q. DATA did not accurately report the PARK PLACE Account trade line after her dispute." *Id.* at 34-35.

- "Credit-financial stigma is real and it is an ugly bi-product of inaccurate credit information." *Id.* at 35.
- "consumers (like [Plaintiff]) who fear the stigma of rejection and embarrassment caused by inaccurate negative trade line reporting." *Id.* at 36.
- "It is my opinion that [Plaintiff] was damaged in multiple ways, including but not limited to the following categories of damages that, when applicable, are expressed in ranges: Credit - Financial Stigma, Credit Score Impact, Reduced Credit Availability and Reduced Credit Expectancy, Chilling, Out-of-pocket expenses for Correction and Dispute, Loss of Quality of Life and Reputation Slander, Medical, Time and energy for Corrections, Sleeplessness, Mental anguish, frustration and upset, Anxiety and Stress, Sense of helplessness, loss of control, Legal Expenses, Statutory, Punitive" *Id.* at 39.
- "I have met with hundreds of consumers; and, it has been my direct experience, that persons, like [Plaintiff], often report that they were emotionally damaged by the stress, time and negative information reported in credit reports and debt collection actions. These effects are further compounded by the actions of a party failing to make proper disclosures." *Id.*
- "Was [Plaintiff] damaged by I.Q.DATA? Yes, economically and non-economically." *Id.* at 41.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

**C. Undisclosed Records**

Tarter's report lists numerous documents that were never produced along with the Report. *Exhibit A*, p. 8-9.

**D. Tarter's Supplemental Report**

On May 1, 2024, Plaintiff disclosed a supplemental report. *Decl. Brodfuehrer*, ¶ 11-12, Exhibit F. The report asks that dozens of statements be struck from the original report. *Id*. Further, Tarter claims that any medical or legal terms used in his report should not be interpreted as medical or legal claims. Plaintiff also produced a word document of internet links for dozens of articles referenced in his original report that were not produced. *Exhibit G*. Actual copies of the articles were never provided to IQ Data. Plaintiff also produced a copy of Plaintiff's declaration that was referenced in the report but not previously produced. *Exhibit H*.

## IV. LEGAL ANALYSIS

**A. Tarter's Report should be stricken for failure to comply with FRCP 26(a)(2).**

Under FRCP 26(a)(2)(B), a party must provide a report prepared and signed by the expert witness. The report must contain information including, but not limited to, all opinions, the basis for said opinions, the data and other information considered by the expert in forming his or her opinion, any exhibits to be used as a summary of the opinions, and the qualifications of the witness. FRCP 26(a)(2)(B). If a party fails to comply with Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) "gives teeth" to the requirements of Rule 26 and is a "self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (internal punctuation omitted) (quoting Fed. R.

Civ. P. 37 advisory committee's note (1993)). The district court has wide latitude in issuing discovery sanctions under Rule 37(c)(1). *Yeti*, 259 F.3d at 1106.

"In determining whether this sanction should be imposed, the burden is on the party facing the sanction ... to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008) (citing *Yeti*, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness.")). The Court could even choose to strike the expert report without considering substantial justification and harmlessness. *Akamai Techs., Inc. v. MediaPointe, Inc.*, No. 222CV06233MCSSHKX, 2024 WL 608015, at *5 (C.D. Cal. Jan. 3, 2024).

The Ninth Circuit has articulated several factors for the Court to consider when determining whether a violation of the expert discovery rules was harmless, including: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness . . . ." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (citing David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003)).

The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence 702 to ensure specialized evidence is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 & n.7 (1993) ("Daubert I"). The Court's obligation "to scrutinize carefully the reasoning and methodology underlying [expert] affidavits" applies here. *Houle v. Jubilee Fisheries, Inc.*, No. C04-2346JLR, 2006 WL 27204, at *5 (W.D. Wash. Jan. 5, 2006) (quoting Daubert I, 509 U.S. at 501). An entire report may be struck when improper opinions and conclusions render a purported expert's analysis fundamentally flawed and unreliable under Rule 702 and *Daubert*. *See Syneron Med. Ltd. v. Invasix, Inc.*, No. 816CV00143DOCKES,

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

2018 WL 4696969, at *7 (C.D. Cal. Aug. 27, 2018), report and recommendation adopted, No. SACV160143DOCKESX, 2018 WL 11351325 (C.D. Cal. Sept. 28, 2018). Significantly, the burden of establishing the admissibility of an expert's testimony lies with the party offering the testimony. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

Plaintiff's delay in producing the documents Tarter relied upon inhibited IQ Data's ability to provide its own rebuttal expert the necessary information to comply with its expert disclosure deadline. The information in Tarter's reports are harmful, prejudicial, fundamentally flawed, unreliable as a whole, and are not helpful to the jury. Plaintiff did not provide any justification for failing to comply with the disclosure requirement. The report should be stricken on these grounds alone.

**B. Tarter's Entire Report Should be Stricken for the Inclusion of Numerous Improper Legal Conclusions and Assumptions Without Factual Proof.**

It is well settled that experts cannot make legal conclusions. *See Nationwide v. Kass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008) (when an expert purports to offer a legal opinion on an ultimate issue, such testimony must be excluded because "offering legal conclusion testimony invades the province of the trial judge."); *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d at 1053, 1066 n.10 (9th Cir. 2002) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."). Expert conclusions which do not inform the jury about the facts but which "merely function like jury instructions," are impermissible. *Lee v. First Nat'l Ins. Co.*, No. CV0906264MMMCWX, 2010 WL 11549637, at *10 n.80 (C.D. Cal. Dec. 22, 2010) (quoting Charles A. Wright et al., FED. PRAC. & PROC. EVID. § 6265.2 (2d ed.)); *see also Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008) (striking report for opining how statutes applied to the

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

**Gordon Rees Scully Mansukhani, LLP**
5 Park Plaza, Suite 1100
Irvine, CA 92614

facts of the case and for opining conduct of defendant violated statute). Whether IQ Data violated the FCRA as a matter of law is for the Court to decide on IQ Data's pending motion for summary judgment. *See Keshish v. Allstate Ins. Co.*, 959 F. Supp. 2d 1226, 1240–41 (C.D. Cal. 2013) (when an expert cites no facts supporting their opinion, conclusions such as defendant "fail[ed] to try in good faith to reach an agreed scope of damages" is simply a legal conclusion and does not suffice to raise triable issues of fact); *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) ("Resolving doubtful questions of law is the distinct and exclusive province of the trial judge.").

Whether IQ Data violated the FCRA is not for Tarter to decide, nor is he qualified to make the conclusions he makes in his report. Yet, Tarter explicitly opines that IQ Data violated the FCRA. *Exhibit A*, pgs. 3, 24, 26, 30, 31, 40. Tarter also opines that IQ Data violated a Michigan statute. *Id.* at 4, 30. Tarter is not a Michigan lawyer and has no knowledge regarding Michigan landlord/tenant laws. Tarter is a banking expert, yet his "opinions" reach far beyond that of a banking expert. Several pages of Tarter's report include conclusions that were copied and pasted from Plaintiff's Complaint. *See* Report, at (p. 19, 21, 25, 30, 34, 40).

Tarter's report also opines that IQ Data's alleged actions affected Plaintiff's ability to obtain credit and also impacted her credit, all without offering tangible evidence to support these claims. *Exhibit A*, pg. 17. Tarter admits that his opinions are merely speculative and does not provide any data or records regarding what Plaintiff's credit score was prior to or after the alleged debt reporting.

Finally, Tarter even opines that the subject utilities leger "mysteriously appeared after ***we*** had commenced litigation." *Exhibit A*, p. 17 (emphasis added). This is something Plaintiff has alleged in prior motions. Again, Tarter simply copy pasted this from Plaintiff and repackages it as his own opinion. *See*

*generally Daubert I*, 509 U.S. 579; *Spintouch Inc. v. Outform, Inc.*, 2022 WL 17363902, at *5 (C.D. Sept. 28, 2022) (An expert's opinion "must be excluded if that expert is merely parroting some other person's opinion rather than formulating his own."). This kind of testimony lacks "any real expertise" because she "simply adopt[s] the opinions of others," and is precisely the kind of testimony that courts in this circuit have cautioned against. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017); *see also United States v. Gadson*, 763 F.3d 1189, 1212 (9th Cir. 2014) (expert witness may receive unmerited credibility for lay testimony because their testimony is "likely to carry special weight with the jury").

As the Court should begin to appreciate, the dozens of egregious violations here warrant striking the report as a whole. Striking individual statements will not be enough as the report is completely intertwined with these improper opinions. *See Syneron Med. Ltd. v. Invasix, Inc.*, No. 816CV00143DOCKES, 2018 WL 4696969, at *7.

**C. Tarter's Opinions Concerning Damages are Inadmissible.**

Tarter is not qualified to testify concerning Plaintiff's alleged emotional distress damages so his opinions should be excluded. *See Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 2628620, at *9-11 (C.D. Cal. Mar. 15, 2023) (excluding expert opinion where the plaintiff lacked the "knowledge, skill, experience, training, [and] education" to opine on a certain topic).Tarter claims to be a banking expert witness and a financial and management consultant. *Exhibit B*, p.1. Plaintiff has not provided medical records and specifically testified that she has not undergone medical treatment or psychological/psychiatric treatment related to the alleged debt collection. *Exhibit E*. Yet, astoundingly, Tarter attempts to offer unsupported medical diagnoses disguised as his "opinions." Tarter opines that Plaintiff suffered non-economic damages (pgs. 3, 41); loss of enjoyment of life (p. 18); loss of quality of life (pgs.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614

19, 39); frustration and nightmare (p. 23); chilling, anxiety, embarrassment, loss of sleep, headaches (p. 31); loss of normal life, family, household, and image (pgs. 34-35, 39); and financial stigma, rejection, embarrassment, mental anguish, helplessness, loss of control, stress, anxiety, and emotional damages (pgs. 35-36, 39). These are more allegations copied and pasted from Plaintiff's own Complaint. Tarter provides no information that he is qualified to testify concerning emotional distress issues. Tarter is not a health care provider and has no medical training. There is no evidence that he is qualified to testify as to these matters. Further, even if he was qualified, Tarter never even alleges that he met with Plaintiff or interviewed her. Even if these opinions were admissible, they are not based upon personal knowledge and should be stricken. These improper opinions will unfairly prejudice IQ Data and will weigh on this Court's judicial resources by having to rule on future pretrial motions if he is permitted to testify

**D. Tarter's Supplemental Report and Disclosures Are Still Deficient**

Tarter's supplemental report includes a list of portions of his prior report that he would like deleted. Despite him conceded that he was not qualified to make several statements, there are still numerous improper conclusions that remain. The Supplemental Report and production of links to websites does not resolve the deficient expert disclosure. All documents he relied upon were supposed to be produced with the original report. Although Tarter references several articles and financial literatures in his numerous footnotes, Plaintiff and Tarter failed to produce any of these documents for which Tarter purportedly relied until after the deadline had passed. Because Tarter was required to produce "any exhibits that will be used to summarize or support" his opinions, the disclosure is deficient regardless of the supplements because (1) they were untimely; and (2) no exhibits were produced, just web addresses. FRCP 26 (a)(2)(B)(iii). On this basis alone, the Court should strike the report and expert disclosure pursuant to FRCP 37.

**E. Tarter has been excluded for similar reasons before.**

The Court has granted motions to strike the disclosure and report of Thomas Tarter before. *See Schoendorf v. Baker*, No. CV-03-461-RHW, 2005 WL 8158643, at *5 (E.D. Wash. Feb. 17, 2005) (The Court strikes the expert testimony of Thomas Tarter.). In *Snyder v. Bank of Am., N.A.*, the Court excluded Tarter for providing irrelevant opinions, opinions he was not qualified to make, opinions on matters that were for the jury to decide, and opinions on matters that were not based on applicable standards. No. 15-CV-04228-KAW, 2020 WL 6462400, at *2 (N.D. Cal. Nov. 3, 2020). In *Anderson v. Wells Fargo Bank, N.A.*, the Court granted defendant's motion to strike Tarter's expert testimony because "Tarter is not qualified to testify regarding the [plaintiff's] purported medical or psychological damages. No. 3:16-CV-2514-N, 2018 WL 3426269, at *17 (N.D. Tex. July 13, 2018). The Court also struck Tarter's testimony containing legal terminology and conclusions.

**V. <u>CONCLUSION</u>**

For the reasons set forth above, Tarter should be excluded and Plaintiff's expert disclosure and report should be stricken for violating Federal Rule of Civil Procedure 26. Additionally, Tarter's expected testimony is admissible under Federal Rule of Evidence 702 and would unfairly prejudice IQ Data.

Dated: May 10, 2024

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/Joel D. Brodfuehrer
Kendra S. Canape
Joel D. Brodfuehrer
Attorneys for Defendant
IQ DATA INTERNATIONAL, INC.

Gordon Rees Scully Mansukhani, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614