Robert F. Brennan, Esq. [S.B. #132449]
LAW OFFICES OF ROBERT F. BRENNAN, A P.C.
2103 Montrose Ave., Suite D
La Crescenta, CA 91214
Tel. (818) 249-5291; Fax (818) 249-4329
Email: rbrennan@brennanlaw.com

Attorney for Plaintiff
MONIQUE HESSELBROCK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE HESSELBROCK, an Individual;<br><br>Plaintiff,<br><br>vs.<br><br>I.Q. DATA INTERNATIONAL, INC., is a business entity; EQUIFAX INFORMATION SERVICES, LLC., is a business entity; and DOES 1-25, Inclusive,<br><br>Defendants. | Case No.: 2:23-cv-02169 FLA (PVCx)<br>Hon. Fernando L. Aenlle-Rocha<br><br>**PLAINTIFF'S OPPOSITION TO I.Q. DATA'S MOTION TO STRIKE PLAINTIFF'S EXPERT DESIGNATION AND REPORTS**<br><br>Hearing Date: June 7, 2024<br>Time: 1:30 p.m.<br>Courtroom: 6B<br><br>Complaint Filed: 3/23/2023<br>Trial Date: 8/20/2024 |

# I. INTRODUCTION

Defendant IQ Data International, Inc. ("IQ") moves to strike the original and supplemental reports of Plaintiff Monique Hesselbrock's expert witness, Thomas Tarter, likely because IQ missed the deadline to submit an expert report.

IQ's argument is replete with misleading hyperbole, misdirection, and false, unsupported conclusory statements. *Most notably, IQ constantly refers to Mr. Tarter's original report without taking into account the amendments to it in his supplemental report.* Before the filing of this motion, IQ sent to Plaintiff's counsel a list of alleged defects in Mr. Tarter's expert report, and Mr. Tarter prepared a supplemental report which addressed each of IQ's issues. (Brennan Decl., ¶¶ 7-9.)

The first sentence of IQ's Introduction states that Mr. Tarter "claims to be a banking expert witness and a financial and management consultant." (Def. P&As, 5:7-8.) Mr. Tarter's CV establishes that he "is" an expert in these fields and eminently qualified to be an expert witness in this case. (Brennan Decl., **Exhibit 1**, Tarter CV.)

As discussed herein, each of IQ's arguments fails, and its motion should be denied in its entirety.

# II. STATEMENT OF FACTS

This case arises out of wrongful credit reporting by Defendant IQ concerning an amount that Plaintiff Monique Hesselbrock does not owe. Plaintiff alleges three causes of action in her First Amended Complaint: (1) violation of the federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.); (2) violation of the California Rosenthal Fair Debt Collection Practices Act (Civil Code § 1788 et seq.) and the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.); and (3) violation of the California Consumer Credit Reporting Agencies Act (Civil Code § 1785.1 et seq.).

Plaintiff takes issue with the facts presented by IQ relating to the subject of this motion. In the interest of avoiding repetition, the factual discussion is presented within the discussion below.

## III. ARGUMENT

### A. LEGAL STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY.

Fed. R. Evid. 702 sets forth the factors for the admissibility of expert testimony as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). "The line between expert opinion on an ultimate issue of fact and a legal conclusion is fine; an expert can testify to an issue of law, but not express an opinion on a conclusion of law. [Citation.] For instance . . . , the plaintiff's expert could testify that the defendants deviated from industry standards in order to support a finding of bad faith. [Citation.] However, the expert could not testify that he had reached a legal conclusion that Defendants actually acted in bad faith." *Est. of Lefthand v. Tenke*, 646 F. Supp. 3d 1287, 1292 (D. Mont. 2022)

"An expert may refer to legal provisions but may not reach legal conclusions." *Robles v. Am. Zurich Ins. Co.*, 626 F. Supp. 3d 1089, 1091 (D. Ariz. 2022).

"Unless the court orders otherwise, an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data. But the

expert may be required to disclose those facts or data on cross-examination." Fed. R. Evid. 705.

### B. MR. TARTER'S REPORT DOES NOT CONTAIN IMPROPER CONCLUSIONS AND STATEMENTS.

IQ begins its argument with a bullet-point list of what IQ asserts are improper conclusions in Mr. Tarter's **original report**. (Def. P&As, 7:26 – 10:11.) IQ's list is misleading because IQ does not specify which of these were revised with Mr. Tarter's Supplemental Report. (See Brennan Decl., **Exhibit 2**, Supplemental Report.) IQ focuses on the original report throughout the argument, leaving discussion of the Supplemental Report for the next to last section of its argument. (Def. P&As, p. 17, section D.)

In its argument, IQ only offers a few conclusory sentences referencing pages of the **original report**, **ignoring entirely the Supplemental Report.** (See, e.g., Def. P&As, 15:10-18.) IQ's argument fails to discuss which of the remaining items in the original report it believes are conclusory. IQ leaves the Court with a convoluted mess.

IQ's bullet-point list of objections based on the original report consists of 24 items, which IQ asserts are legal conclusions or conclusions made with lack of knowledge. (Def. P&As, 7:26 – 10:11.) Plaintiff maintains that the Supplemental Report dispensed with most of the objections, and any items remaining were either not identified in the meet and confer process or which Plaintiff maintains are not improper conclusions. (See Exhibit 2, Supplemental Report, pp. 2-3.) IQ's failure throughout its argument to identify which items remain objectionable after the Supplemental Report should be deemed as IQ having no justifiable objections. IQ's reliance on broad generalities, particularly in referring only to the original report, should be regarded as fatal to its motion.

IQ also has a bullet-point list of 11 items referring to Mr. Tarter's conclusions as to Plaintiff's damages. (Def. P&As, 10:12 – 11:28.) Again, Plaintiff maintains that

the Supplemental Report dispensed with most of these and any items remaining were either not identified in the meet and confer process or which Plaintiff maintains are not improper conclusions. (See Exhibit 2, Supplemental Report, pp. 3-4.) Mr. Tarter's opinions related to Plaintiff's damages are discussed in section III.E below.

### C. **MR. TARTER'S REPORT COMPLIES WITH FRCP 26(a)(2).**

IQ argues that Mr. Tarter's report should be stricken for failure to comply with FRCP 26(a)(2). (Def. P&As, 12:15 – 13:12.) This part of IQ's argument cites numerous cases, but IQ does not express how the report fails to comply with Rule 26(a)(2), or how the cases apply here.

The only part of the argument referencing the report is the final paragraph of the section. (Def. P&As, 14:6-11.) IQ asserts that the delay in producing documents that Mr. Tarter relied upon inhibited IQ's ability to provide its own rebuttal expert with the necessary information to comply with its expert disclosure deadline. IQ fails to identify what documents were critical for the rebuttal expert.

The "documents, publications and information" that Mr. Tarter relied upon are listed on pages 8 and 9 of his original report. (Brennan Decl., **Exhibit 3**, original report.) These can be divided into three categories: (1) documents already in IQ's possession; (2) reference sources that any experienced expert in the relevant field would already have in his or her personal library; and (3) sources that an experienced expert might not have. Mr. Tarter's Supplemental report provided the information relating to sources in category (2) and all sources in category (3). (See Exhibit 2, Supplemental Report, pp. 4 & 5.)

As for the delay, it was of IQ's own making. In prior filings, IQ admitted it made the tactical decision not to have an expert witness in this case. (See Dkt. # 72, IQ's Ex Parte Request for Rebuttal Expert Deadline Extension, 5:3-22.) IQ has also failed to show that it acted without delay in the meet and confer process to point out any objections. Plaintiff acted as swiftly as possible in producing Mr. Tarter's

Supplemental Report once the objections were made known. (Brennan Decl., ¶¶ 7-10.)

IQ only makes very conclusory, unsupported statements as to Mr. Tarter's reports, without reference to specifics. Plaintiff maintains that Mr. Tarter's Supplemental Report shows an extraordinary effort and was successful in addressing IQ's concerns.

FRCP Rule 26(a)(2)(E) provides for supplementing expert witness disclosures when required under Rule 26(e), which states:

> (e) Supplementing Disclosures and Responses.
>
> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Here, Plaintiff and Mr. Tarter acted immediately when it became known that additional disclosures were warranted. IQ relies upon *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). (Def. P&As, 12:25 -13:2.) In that case, the party failed to provide his expert report until two and a half years after the close of discovery. *Id.* at 1105. Here, IQ offers no convincing argument that it was harmed under the circumstances presented.

### D. **IQ'S FAILS TO PROVIDE GROUNDS FOR MR. TARTER'S REPORT TO BE STRICKEN.**

IQ argues that Mr. Tarter's entire report should be stricken for including "improper legal conclusions and assumptions without factual proof." (Def. P&As, 14:13-15 for quoted sentence, and 14:16 – 16:15.) Again, IQ relies exclusively on

Mr. Tarter's original report and argues in broad generalities. IQ offers no discussion of what conclusions or assumptions are made without factual proof. In failing to identify what conclusions remain as objectionable after the Supplemental Report, IQ's argument must be viewed as hyperbole and misdirection. Plaintiff maintains that after the Supplemental Report, nothing objectionable remains. Even if the Court found otherwise, there are no grounds for striking the entire report; any objectionable portions could be stricken. Since IQ has failed to identify any items specifically, its argument fails.

With respect to the Michigan Landlord-Tenant Act, Mr. Tarter's original report discussed the issue in the context of IQ's investigation. (Exhibit 3, Tarter original report, p. 29.) In the Supplemental Report, Mr. Tarter deletes the last part of that discussion, which removes any suggestion he is offering a legal conclusion. (Exhibit 2, Supplemental Report, p. 2, para. 1.c.)

IQ relies on *Syneron Med. Ltd. v. Invasix, Inc.*, No. 816CV00143DOCKES, 2018 U.S. Dist. LEXIS 220514, 2018 WL 4696969, at *7 (C.D. Cal. Aug. 27, 2018), report and recommendation adopted, No. SACV160143DOCKESX, 2018 U.S. Dist. LEXIS 220505, 2018 WL 11351325 (C.D. Cal. Sept. 28, 2018). (Def. P&As, 13:28 – 14:3.) That was a patent case involving a complex determination of damages consisting of a reasonable royalty or lost profits. *Id.*, 2018 U.S. Dist. LEXIS 220514, at *2 & *5-20. The expert premised his damages analysis on a single hypothetical negotiation between the parties for all four of the asserted patents. *Id.*, at *20-21. The Special Master commented on the flaws in the expert's analysis, stating in part that "his damages report demonstrates an utter lack of appreciation and/or respect for some of the most fundamental precepts of patent damages calculation in an apparent effort to inflate the damages award." The case clearly does not apply here with respect to Mr. Tarter's report.

IQ argues that an expert cannot merely parrot some other person's opinion rather than formulating his own, citing *Spintouch, Inc. v. Outform, Inc.*, No. SA CV 8:21-00840-DOC-ADS, 2022 U.S. Dist. LEXIS 219227, at *15, 2022 WL 17363902, at *5 (C.D. Cal. Sep. 28, 2022). (Def. P&As, 16:1-4.) The court noted, however, that "experts need not be percipient witnesses and may rely on assistants to formulate their opinions." *Id*. Here, there is no indication that Mr. Tarter is merely parroting without formulating his own opinion.

The court in *Spintouch* denied the motion in limine in question, stating that the defendants' arguments would be adequately represented at trial through their rebuttal report and could be addressed on cross-examination. The court further noted that the defendants were raising only questions as to the persuasiveness, rather than the reliability of the expert's testimony, finding that they were questions for the jury. *Id.*, Lexis, at *16-17. The same applies here.

IQ asserts that Plaintiff did not provide all prior versions of Mr. Tarter's report. (Def. P&As, 7:1-19.) IQ offers no supporting authority that all working drafts of an expert report must be produced, and Plaintiff finds no such authority. Working drafts in which there are discussions with the attorney and client should be viewed as attorney work product.

### E. MR. TARTER'S STATEMENTS CONCERNING PLAINTIFF'S DAMAGES WOULD BE HELPFUL TO THE JURY.

IQ objects to Mr. Tarter's report concerning emotional distress damages. (Def. P&As, 16:16 – 17:13.) Mr. Tarter is not making conclusions specifically about Plaintiff's emotional distress damages. He is only confirming from his experience in cases of wrongful credit reporting and debt collection what typically occurs with respect to consumers in general. Mr. Tarter notes that Plaintiff's experience, based on her deposition testimony, is consistent with what he routinely identifies with consumers in general. (Exhibit 2, Supplemental Report, p. 3-4, para. 3.) Since he is

only providing his perspective based on his experience in the credit and collections industry, the testimony would be helpful to the jury. Fed. R. Evid. 702(a).

### F. IQ'S REFERENCE TO THREE PRIOR CASES IS UNAVAILING AS A BASIS FOR EXCLUDING MR. TARTER.

Mr. Tarter has testified as an expert witness in over 300 cases. (Exhibit 4, Tarter list of cases.) IQ asserts he was excluded in three cases: *Schoendorf v. Baker*, No. CV-03-461-RHW, 2005 WL 8158643, at *5 (E.D. Wash. Feb. 17, 2005), *Snyder v. Bank of Am., N.A.*, No. 15-CV-04228-KAW, 2020 WL 6462400, at *2 (N.D. Cal. Nov. 3, 2020); and *Anderson v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2514-N, 2018 WL 3426269, at *17 (N.D. Tex. July 13, 2018). (Def. P&As, 18:1-14.) IQ has failed to show that the exact same circumstances are present here, and they are not.

For example, in *Snyder*, five other experts were excluded. The motions to exclude were unopposed. *Snyder*, *supra*, at 3, 6, 9 & 11-13. The case involved complex circumstances involving Bank of America's alleged mishandling of loans and compliance with the National Mortgage Settlement. Mr. Tarter's testimony did not concern any credit reporting issues.

In *Anderson*, the court found Mr. Tarter's methodology sufficiently reliable, overruling the defendant Wells Fargo's objections. *Anderson*, *supra*, at *12. His testimony was only excluded as to limited aspects of the case, including medical and psychological damages. *Id.*, at 50. Here, Mr. Tarter is only giving background information related to the industry, not specifics as to Plaintiff's medical and psychological damages, and as such it would be helpful for the jury. (Exhibit 2, Supplemental Report, p. 3-4, para. 3.)

**1. Mr. Tarter Has Been Accepted Repeatedly As a Credit Damages/Fair Credit Reporting Act Expert in both Federal and State Courtrooms in Los Angeles.**

PLAINTIFF'S OPPOSITION TO MOTION TO MOTION TO STRIKE EXPERT'S REPORT

Plaintiff's counsel has personally worked with Mr. Tarter as an expert witness for nearly 20 years. In that time, in both federal and state courts, there have been occasional challenges to his expertise or his opinions, which have been almost uniformly unsuccessful. In this federal district court, Mr. Tarter's opinions were allowed, over objections and challenges, in *Nelson v. Equifax, et al.,* Case no. CV06-1568 RGK (PLAx) (The Hon. R. Gary Klausner presiding) and in *Kim v. BMW Financial,* Case No. 2:14–cv–01752–BRO (SHx) (the Hon. Beverly Reid O'Connell, dec'd, presiding). Mr. Brennan has also handled several state court cases where Mr. Tarter's opinions were allowed over objections and challenges, most recently (2022) in *Larios v. SLS,* Los Angeles Superior Court Case No. 18STCP02482 (the Hon. Curtis Kin, presiding). All three of the cited cases went to verdicts in favor of the plaintiffs. (Brennan Decl., ¶ 11.)

In addition to his testimony in civil cases, Mr. Tarter has repeatedly qualified as an expert in bankruptcy cases involving banking and credit issues. *See,* Ex. 1, Tarter CV. There can be no doubt that Mr. Tarter is fully qualified as an expert in this case and that his testimony would be helpful to the jury. (See Exhibits 1 & 4, Mr. Tarter's CV, including case list.)

## IV. CONCLUSION

For the above-stated reasons, IQ's motion should be denied in its entirety.

Respectfully submitted,

Dated: May 17, 2024           **LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**

By:   */s/ Robert F. Brennan*
         Robert F. Brennan
         Attorney for Plaintiff
         MONIQUE HESSELBROCK

PLAINTIFF'S OPPOSITION TO MOTION TO MOTION TO STRIKE EXPERT'S REPORT

CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Monique Hesselbrock, certifies that this brief contains 2,892 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 17, 2024             **LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**

                        By:   */s/ Robert F. Brennan*
                              Robert F. Brennan
                              Attorney for Plaintiff
                              MONIQUE HESSELBROCK