Robert F. Brennan, Esq. [S.B. #132449]
LAW OFFICES OF ROBERT F. BRENNAN, A P.C.
2103 Montrose Ave., Suite D
Montrose, CA 91020
Tel. (818) 249-5291; Fax (818) 249-4329
Email: rbrennan@brennanlaw.com

Attorney for Plaintiff
MONIQUE HESSELBROCK

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE HESSELBROCK, an Individual;<br><br>Plaintiff,<br><br>vs.<br><br>I.Q. DATA INTERNATIONAL, INC., is a business entity; EQUIFAX INFORMATION SERVICES, LLC., is a business entity; and DOES 1-25, Inclusive,<br><br>Defendants. | Case No.: 2:23-cv-02169 FLA (PVCx)<br>Hon. Fernando L. Aenlle-Rocha<br><br>**DECLARATION OF ROBERT F. BRENNAN SUPPORTING ATTORNEY'S FEES AND COSTS INCURRED IN OPPOSING I.Q. DATA INTERNATIONAL, INC.'S MOTION FOR RULE 11 SANCTIONS; EXHIBITS**<br><br>Hearing Date: At Court's discretion.<br>Time: At Court's discretion.<br>Courtroom: 590<br><br>Complaint Filed: 3/23/2023<br>Jury Trial: 10/22/2024 |

# DECLARATION OF ROBERT F. BRENNAN

I, ROBERT F. BRENNAN, declare:

1. I am counsel for Plaintiff Monique Hesselbrock in this matter, and if called upon to testify to matters set forth in this declaration, I could do so truthfully and competently from personal knowledge.

2. On July 17, 2024, this Court issued an "Order Denying Defendant I.Q. Data International, Inc.'s Motion for Sanctions [Dkt. 49] and Ordering I.Q. Data to Show Cause Why Sanctions Should Not Be Imposed." (Dkt. 100.)

3. The Order provided that Plaintiff may file a declaration within fourteen (14) days of the Order, identifying with specificity the attorney's fees and costs she reasonably incurred in opposing IQ Data's Rule 11 Motion, finding that the motion was frivolous. (Dkt. 100, p. 8.)

4. I submit this declaration identifying the attorney's fees and costs incurred and attesting that they were reasonably incurred.

5. IQ has already been sanctioned in this matter for discovery abuses—bringing a protective order to entirely prevent Plaintiff from taking any depositions. Magistrate Judge Pedro V. Castillo assessed monetary sanctions against IQ's counsel for making the motion for a protective order. (Dkt. 78.)

6. IQ's strategy in preventing depositions was to prevent Plaintiff from having any deposition testimony with which to oppose IQ's Rule 11 motion. IQ filed a motion for Rule 11 sanctions against Plaintiff and set the hearing for April 12, 2024. (Dkt. No. 49.) Plaintiff's opposition was due on March 22, 2024, Plaintiff had to oppose IQ's Rule 11 motion without the benefit of IQ's deposition testimony.

7. As pointed out in the Court's Rule 11 Order (Dkt. 100), IQ misrepresented Ms. Hesselbrock's deposition testimony in an effort to claim that her case is frivolous. Plaintiff opposed IQ's motion with substantial evidence, enough that any reasonable attorney would have withdrawn the motion, but IQ proceeded with a reply brief.

8. This Court's Order stated that IQ Data's representations and characterization of the facts giving rise to its motion were "grossly misleading." (Dkt. 100, at 6:13-14; see also, 5:12 – 7:18.)

9. The Rule 11 motion was never anything more than an intimidation tactic and was never reasonable and good faith lawyering by IQ and its counsel. It unnecessarily ran up Plaintiff's litigation costs.

10. Set forth below are facts supporting the reasonableness of the hourly rates charged and hours incurred.

**ROBERT F. BRENNAN'S PROFESSIONAL RESUME AND EXPERIENCE:**

11. **Professional resume:** The following is a brief, and not necessarily complete, description of my professional resume and experience, presented to establish the reasonableness of the hourly rate charged to the present case:

a. **Trial and appellate experience:** I am a veteran of approximately 75 civil jury trials as lead counsel, in addition to court trials, court-ordered arbitrations and private arbitrations too numerous to count. I have won a large majority of my civil jury trials. A very conservative estimate would be between 60% and 70% with juries returning plaintiff's verdicts exceeding the defendant's best pre-trial offer. These trials have been in both state and federal court. I have tried credit damage and identity theft cases in addition to "lemon law" and automotive fraud cases, personal injury, medical malpractice, legal malpractice, business and real estate cases to juries, primarily representing consumer plaintiffs. I have published opinions as lead counsel in Fair Credit Reporting Act cases, Identity Theft cases, personal injury cases and Song-Beverly "lemon law" cases.

b. **Professional Awards and Recognitions:** In September of 2005, I received notification that I have been selected as a "2006 Southern California Super Lawyer." The selection criteria for "Super Lawyers" indicates, "Each year Law & Politics sends a ballot to the approximately 65,000 active lawyers in Southern California who have been in practice five years or more. The ballot asks lawyers to nominate the best

attorneys they've *personally observed in action."* (Italics in original.) I was again selected as a "Southern California Super Lawyer" for every ensuing year up to the present time—I was recently notified that I have been selected as a "Southern California Super Lawyer" for 2024. This is my 19th straight year as a Southern California Super Lawyer.

      c. In 2007, I was one of 100 attorneys nominated for the prestigious "25 Best Lawyers In the Valley" award by the San Fernando Valley Business Journal. (I did not make it to the final 25.) In 2011, I was a finalist for the San Fernando Valley Business Journal "Top Advisors" award, given to a handful of top accountants, attorneys, insurance and banking professionals in the San Fernando Valley.

      d. I was honored as a "Top Attorney" by Pasadena Magazine, for attorneys practicing in the greater Pasadena area. I have received this award for thirteen consecutive years, 2010 through 2022.

      e. **Firm Rating**: I received an "AV" rating from the Martindale-Hubbell Company in the spring of 2003, on the very first time I had received any kind of rating from that agency. As I am now an "AV" rated attorney, my firm also enjoys an "AV" rating. I have also received a "10 out of 10" rating on the online AVVO rating service. This is the highest possible rating.

      f. **Expert witness assignments:** I have been consulted as an expert witness on about nine or ten occasions in class action, malpractice and fee dispute cases involving underlying consumer protection, warranty or fraud causes of action. In three of these cases, I testified as an expert witness at deposition, and the cases then settled prior to trial.

      g. **Articles in Legal Publications:** In February of 1995, one of my articles on automotive fraud cases appeared in the "Advocate", the monthly publication of the Consumer Attorney's Association of Los Angeles, formerly the Los Angeles Trial Lawyer's Association.

DECLARATION OF ROBERT F. BRENNAN RE ATTORNEY'S FEES AND COST ON RULE 11 MOTION

h. One of my articles, "Faith and Credit" ran in the November, 2004 Los Angeles Lawyer Magazine. This article concerns the faulty and incorrect reasoning behind a line of cases which hold for FCRA pre-emption of California's Consumer Credit Reporting Agencies Act ("CCRAA"). I updated the article for the July, 2009 edition of *Los Angeles Lawyer* magazine, after both the Ninth Circuit and the California Second District Court of Appeals determined that California's CCRAA is not pre-empted by the federal FCRA. Along with Public Justice and Public Citizen, I co-wrote the *amicus* brief for the Ninth Circuit decision which overturned many years of wrongly decided pre-emption cases on this issue. *Gorman v. Wolpoff & Abramson*, 584 F. 3d 1147 (2009).

i. In addition to the *Los Angeles Lawyer* articles, I have written several articles on various consumer protection issues, including "lemon" law, wrongful credit reporting and identity theft, for several legal and educational publications over the last 30 years.

j. **Approved CLE Presentations Within the Last Several Years:** I have been a featured speaker at CLE-approved presentations on various topics for nearly 30 years. Because there have been several, I may forget a few, but following are a few from recent times:

i. 2003: speaker at Glendale Bar Association Spring Seminar. Topic: "Consumer Law Issues and Trends".

ii. 2006: National Consumer Law Center Annual Consumer Litigation Conference, in Miami, Fla. I was one of the panelists on an all-day presentation on law practice management for consumer attorneys.

iii. January of 2005, and again in 2006: I was a featured speaker at the annual Credit Law Institute Conference on Consumer Finance Law. The Credit Law Institute is a group of attorneys who represent mostly banks and finance institutions. My topic of address was litigation under the Fair Credit Reporting Act from the consumer perspective. Again, this was the "other side" soliciting my input.

iv. Los Angeles Inn of Court, December 2007: I gave a presentation on cross-examination and impeachment to the Inn of Court.

v. April 26, 2008: Glendale Bar Association Spring Seminar.  Topic will be one hour of ethics CLE based on legalities and proprieties of tape-recording certain types of phone calls.

vi. March, 2011: I conducted the Los Angeles County Bar Association Inn of Court dinner seminar on dealing with federal court for those that are not familiar with federal court rules and requirements.

vii. March 2011: I spoke at the national conference sponsored by National Association of Consumer Advocates on closing arguments in debt collection abuse and credit damage cases.

viii. September 2011: I was a featured speaker on a panel at the California State Bar Convention on the topic of remedying false information in consumer background/tenant/employment checks.

ix. September 2011: I gave a one-hour presentation to the Southeast Bar Association on the California "lemon" law, the Song-Beverly Consumer Warranty Act.

x. November 2011: I led a panel at the Los Angeles County Bar Association Inn of Court dinner, this time the topic being voir dire and jury selection.

xi. Two LA County Bar Inn of Court panels in 2013: one dealing with law firm marketing and one dealing with federal court practice, where I moderated a panel of three sitting federal court judges.

xii. June, 2015, webinar for National Association of Consumer Advocates and National Consumer Law Center, "How Consumer Law Specialties Choose You."

xiii. Mid-2018: featured speaker in webinar on successful tactics and strategies which led to a noteworthy trial result in *Kim v. BMW Financial Services*. My co-panelist for this webinar was Stephanie Tatar, Esq., who was also my co-

counsel in this case.

xiv. April 2019: featured speaker and panelist at National Consumer Law Center spring conference on Fair Credit Reporting Act litigation.

xv. (Upcoming): featured speaker in webinar on successful tactics and strategies which led to a noteworthy trial result in *Larios v. Specialized Loan Servicing LLC*. My co-panelist for this webinar will again be. Ms. Tatar. We co-counseled and obtained a jury verdict of $2.9 million for violations of the California Consumer Credit Reporting Agencies Act. We also obtained an injunction against Specialized Loan Servicing LLC to prevent it from foreclosing on our client's property.

k. **Military "JAG" Training:** Many military attorneys seek assistance from experienced consumer advocates for training in consumer law. I have both presented to the Los Angeles Air Force Base JAG contingent and have consulted with several of the individual JAGS regarding consumer law issues. This is all pro bono.

l. **Legal Services Training:** Like the JAG training, I have given seminars on consumer protection issues to legal services attorneys in Southern California. I am not sure whether these attorneys claimed CLE credits for these, but I believe they could have. Again, this was pro bono.

m. **Books:** I am a published author of "Debt Collection Answers—California Edition," a book with timely and pertinent advice to consumers being harassed by debt collectors. I am a contributor to many publications, most recently bankrate.com, where I participated in an article concerning proper and improper ways of dealing with debt collectors.

12. Education

A.B., Princeton University, 1981. J.D., University of California Davis Law School, 1987. I wrote for both college and law school newspapers and was a member of the U.C. Davis Law School National Moot Court Team. In college, I was a member of the Princeton water polo team, which won the NCAA Div. II Eastern

Championship during my junior year.

13. <u>Professional Memberships</u>

State Bar of California; Los Angeles County Bar Association (Member, Litigation Section); Consumer Advocates Association of Los Angeles; National Association of Consumer Advocates; Glendale Bar Association; Pasadena Bar Association.

In 2004 I was appointed as a trustee of the Glendale Bar Association, a position I held until January of 2008.

I have been on the Board of Directors of the Irish-American Bar Association since the first part of 2024.

I served for several years on the Board of Directors of the LA County Bar Inn of Court and acted as a "Judicial Liaison" for the Inn.

I am a founding member of the National Association of Consumer Attorneys ("NACA"), a 28-year-old national organization of consumer rights attorneys which is affiliated with the National Consumer Law Center. In October of 2002, NACA appointed me to be the chairperson for NACA'S Southern California chapter. In 2005, NACA appointed me as "State Coordinator" for the entire state of California. I held that position and title until 2014.

14. <u>Court Admissions</u>

I am admitted to practice in the Central, Southern and Northern Federal District Courts in California and to the United States Supreme Court. My uncle, Justice William J. Brennan, Jr., deceased, sponsored my admission to the United States Supreme Court in 1992.

**REASONABLENESS OF HOURLY RATES:**

15. My billable rate on this case of $775.00 per hour is quite reasonable for lead trial counsel in any Los Angeles-area law firm, much less one with over 34 years' experience and over 75 jury trials. In connection with some of my expert

assignments, as described above, I have periodically surveyed the rates for partners and associates at major AV-rated law firms in California's major metropolitan areas. I used as source material surveys conducted by *American Lawyer* and *California Lawyer* magazines, as well as phone calls to persons I know who work or had worked at these firms. I have learned the following: in AV-rated firms in metropolitan areas in California, "star" partner rates are presently in the range of $1,200 per hour or higher. Partners with 10 or more years of experience and five or more jury trials are consistently charging in excess of $600.00 per hour for litigation services, and sometimes at or above $1000 per hour. Associates three years out of law school with positively no trial experience are consistently charging in excess of $400 per hour. Paralegals are charged out at rates ranging from $100 per hour on the low end to around $350 per hour on the higher end, usually depending upon years of experience and whether they were certified paralegals. Currently (2024), trial counsel with 20 years' experience in AV-rated firms in California's metropolitan areas routinely charge at or in excess of (often well in excess of) $700 per hour.

16. Attached as **Exhibit A** are excerpts of the United States Consumer Law Attorney Fee Survey for California, 2017-2018 Edition. The methodology of its preparation is discussed in the first several pages. According to this survey, p. 229, the average hourly rate for a Los Angeles attorney with 31-35 years of experience is $731. Thus, my rate of $775 for over 34 years' experience is reasonable. This is specifically for consumer litigation.

17. My billing rate of $775.00 per hour is warranted based upon my experience and performance record, particularly in the area of consumer litigation. I have developed an excellent reputation for my expertise in the area of consumer litigation. I also have an extensive amount of experience in all aspects of litigation, including numerous trials and appeals in both state and federal courts.[1]

---

[1] In my last two contested fee applications, one state court judge and one federal judge set my hourly rate at $695 per hour. These cases were older, one filed in 2018

**Associate and Law/Research Clerk Billing**

18. Stephen Crilly ("SC") is billed at $500/hr. He is licensed to practice law in New York and has an inactive status in Missouri. He has over 35 years of experience, working in-house for a Fortune 500 company, then with law firms. He was Senior Executive Editor of a law review when he attended Syracuse University College of Law. He has assisted my firm with research and drafting for over 25 years and has extensive experience with California and federal law, with an emphasis on consumer protection and credit damage cases.[2]

**Paralegal Billing**

19. In prosecuting this action, I received assistance from Robert Bichler ("RCB"), a very experienced paralegal whom I have personally trained. Mr. Bichler has worked at my firm for over 27 years and has a Master's Degree from Marquette

---

and one filed in 2021, and my hourly rate has since risen. In meet and confer with opposing counsel, I provided him with the complete written decisions from both cases setting my hourly rate at $695 per hour. *Larios v. SLS,* LA Superior Court Case No. 18STCP02482; *Yu v. Tesla,* Central District Case No. CV-21-0062-FMO.

[2] In *Larios, supra,* Judge Curtis Kin reduced Mr. Crilly's hourly rate from $475/hr. to $225/hr. for the sole reason that he was not licensed as an attorney in California, although he is licensed in New York. In *Yu v. Tesla, supra,* Judge Fernando Olguin granted Mr. Crilly's then-claimed rate of $475/hr. and stated that it was reasonable. Arbitrators at both JAMS and AAA have also awarded Mr. Crilly his full claimed hourly rate in contested arbitrations. *Alamo v. Keyes* (AAA Case No. 01-19-0000-1324) and *Chaine v. Tesla* (JAMS Case No. 1220070972). Mr. Crilly's work is legal research and drafting—attorney work—and in the current digital environment, it is much more common for attorneys to practice across state lines in a research and drafting capacity. In my Fair Credit practice, I routinely practice across from "big firm" attorneys in Chicago, Pennsylvania, Texas or elsewhere, who are not admitted in California. In my lemon law practice, I routinely practice across from Indiana attorneys—where RV's are made—who are not admitted in California. These out-of-state attorneys frequently do not seek *pro hac vice* admission yet participate actively in cases, with local counsel covering court appearances.

University. His hourly rate is $275 per hour. Based upon my research and experience, a rate of $150.00 to $350.00 per hour for experienced paralegals in consumer cases is reasonable and customary in the Los Angeles legal community. It should also be noted from the invoices that my paralegals performed work that could reasonably have been assigned to attorneys billing at significantly higher hourly rates. Accordingly, the total billing should be considered quite reasonable given the history of this case and the amount of work performed by this paralegal.

20. Katherine Lillian Baur (LB) is currently in the final semester of a two-year paralegal certification program and has been working under my direct supervision since August 2021. She has assisted with case intake and the preparation of plaintiff's documents submitted to the court. Ms. Baur has demonstrated exceptional competence and dedication to her work, and her contributions have been instrumental in organizing and preparing documents for my firm. Her billing rate is $225 per hour. Based on my research and experience, a rate of $150 to $350 per hour for experienced paralegals in consumer cases is reasonable and customary in the Los Angeles legal community.

**Billing Practices**

21. Attached hereto as **Exhibit B** is a summary of the computerized billing records prepared in this matter by my office, organized by each timekeeper involved in opposing the Rule 11 motion and preparing the subsequent motion for attorney fees. This summary is compiled from time entries entered into this office's computerized billing program contemporaneously with the function being performed or are based on transcriptions by the timekeeper of handwritten, contemporaneous time entries. The records are accurately recorded by the timekeeper on a daily basis at or near the time of the transaction (i.e. the work that is being billed) and are maintained by the accounting and bookkeeping area of the firm. I did not edit any of these time entries.

22. Attached hereto as **Exhibit C** is a accurate summary of the computerized billing records prepared in this matter by my office, showing the specific entries involved in opposing the Rule 11 motion and preparing the motion for attorney fees. These billing records are grouped by timekeeper and organized by task.

23. The amount of attorney's fees sought in the present motion is based on actual time expended which is recorded on contemporaneous time records that are kept by every timekeeper, whether attorney or paralegal. In my opinion, all the attorney's fees, costs and expenses set forth in the billing record for this opposition were reasonably and necessarily incurred in opposing IQ's tactics and actions. My office has expended more time than claimed in this motion. I have made a special effort to eliminate any attorney and staff time that might be duplicative of work done by others or might have been avoided by optimum economy. Counsel claims only the time stated in the billing summaries with a corresponding charge, which is less than the actual time spent. Counsel have not charged anything for facsimile transmissions, long distance telephone calls or online research charges. Counsel has, in short, already eliminated the "fat" from the documented hours and no further reduction is necessary or appropriate. The hours claimed are "reasonable" as they stand.

24. I have reviewed all of the costs, fees and expenses that are reflected in billing presented for this motion. All of these items were actually, reasonably and necessarily incurred in opposing IQ's Rule 11 motion. As such, Plaintiff has requested that the total amount of attorney's fees, costs and expenses that are set forth in the accompany motion, should be approved. That sum is **$20,561.00**, which is the total of time entries under the "Task Oppo to the Rule 11 Motion" column of **Exhibit B**. This does not include time spent preparing this motion for attorney's fees, $**5,209.00,** which is the total of time entries under the "Task Fees Request" column of **Exhibit B**.

25. Attached hereto are the two summary tables required by this Court's Initial

Standing Order, ¶ 7e. **Exhibit B** is a summary of the hours worked by each attorney, organized by task. **Exhibit C** is a summary of the hours worked by each attorney, organized by attorney.

26. Before filing this motion, I emailed defense counsel Joel D. Brodfuehrer, Esq. and Paul Gamboa, Esq., with a specific demand for attorney's fees and costs, with a 15 percent reduction of the total to encourage a settlement and to avoid this motion. He did not agree.

27. I respectfully request that Plaintiff's attorney's fees be awarded in the full amount requested, as follows:

For opposing IQ's Rule 11 motion: **$20,561.00**. **(Ex. B)**

For preparing this motion for attorney's fees and costs: $**5,209.00 (Ex. B)**

**Total fees and costs requested: $25,770.00.**

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 29th day of July, 2024, at Montrose, California.

*/s/ Robert F. Brennan*
Robert F. Brennan

DECLARATION OF ROBERT F. BRENNAN RE ATTORNEY'S FEES AND COST ON RULE 11 MOTION