Robert F. Brennan, Esq. {S.B. #132449}
**LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**
2103 Montrose Avenue, Suite D
Montrose, CA 91020
Tel: (818) 249.5291 Fax 818.249.4329
Email: rbrennan@brennanlaw.com

Attorney for Plaintiff: MONIQUE HESSELBROCK

Krista Easom, Esq.
Paul Gamboa, Esq.
Joel Brodfuehrer, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614
Telephone: (949) 255-6950 Facsimile: (949) 474-2060
Attorneys for Defendant: IQ DATA INTERNATIONAL, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE HESSELBROCK, an Individual;<br><br>Plaintiff,<br><br>vs.<br><br>I.Q. DATA INTERNATIONAL, INC., is a business entity; EQUIFAX INFORMATION SERVICES, LLC., is a business entity; and DOES 1-25, Inclusive,<br><br>Defendants. | Case No.: 2:23-cv-02169 FLA (PVCx)<br>Hon. Fernando L. Aenlle-Rocha<br>Hon. Pedro V. Castillo, Magistrate Judge<br><br>**JOINT DISPUTED JURY INSTRUCTIONS**<br><br>Complaint Filed: 3/23/2023<br>Pre-Trial Conf.: Nov. 14, 2024<br>Time: 1:30 p.m.<br>Courtroom: 6B<br><br>Trial: Dec. 2, 2024 |

///
///
///

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS AND IQ DATA'S OBJECTIONS**

## 2.14  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**<u>IQ Data's Objection:</u>** IQ Data objects to the charts Plaintiff has created being given to the jury in this case so this instruction is not needed. The charts Plaintiff has included in her exhibit list are based on information that is not accurate, not admissible, and unauthenticated. The Property Manager and Landlord are not being called by Plaintiff to testify.

## 2.15  CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

**IQ Data's Objection:** IQ Data objects to the charts Plaintiff has created being given to the jury in this case so this instruction is not needed. The charts Plaintiff has included in her exhibit list are based on information that is not accurate, not admissible, and unauthenticated. The Property Manager and Landlord are not being called by Plaintiff to testify.

# 5.5 PUNITIVE DAMAGES (MODIFIED FOR FCRA)

If you find for the plaintiff under the federal Fair Credit Reporting Act, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was willful.  Conduct is willful under FCRA if defendant acted recklessly with respect to the rights of plaintiff. A furnisher's conduct is "reckless" if its conduct constituted an unjustifiably high risk of harm that is either known or so obvious that it should be known.

Plaintiff does not need to prove malice, ill will, or spite to prove willfulness.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

Authority for Instruction 5.5 as modified:

15 U.S.C. Section 1681n; <u>Safeco Ins. Co. of America v. Burr</u> (2007) 75 USLW 4386, 127 S.Ct. 2201, 2208-2210, 167 L.Ed.2d 1045.

**IQ Data's Objection:** A punitive damages instruction should not be given to the jury because Plaintiff bears the burden of establishing IQ Data's financial condition. Plaintiff does not plan on calling IQ Data as a witness at trial and the deposition testimony Plaintiff designated does not include questions regarding IQ Data's financial condition. Because Plaintiff bears the burden of establishing IQ Data's financial condition in order to recover punitive damages and will not be presenting any evidence of this at trial, the punitive damages instructions should not be given. *See Covarrubias v. Ocwen Loan Servicing, LLC*, No. EDCV17904FMOSPX, 2018 WL 5914240, at *3 (C.D. Cal. June 21, 2018) (evidence of financial condition and net worth is "information Plaintiff must have to request punitive damages.")

If the Court will allow for punitive damages to be considered by the jury, IQ Data proposed the Ninth Circuit's 5.5 Punitive Damages Instruction:

 If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future.  Punitive damages may not be awarded to compensate a plaintiff.

        The plaintiff has the burden of proving by [a preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded and, if so, the amount of any such damages.

        You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

        If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to

fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.  You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case].

## 5.5 PUNITIVE DAMAGES (MODIFIED FOR CCRAA)

If you find for the plaintiff under the California Consumer Credit Reporting
Agencies Act (CCRAA), you may, but are not required to, award punitive
damages. The purposes of punitive damages are to punish a defendant and to deter
similar acts in the future. Punitive damages may not be awarded to compensate a
plaintiff.

The plaintiff has the burden of proving by a preponderance of the evidence that
punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct
that harmed the plaintiff was willful.  Conduct is willful under CCRAA if
defendant acted recklessly with respect to the rights of plaintiff.  A furnisher's
conduct is "reckless" if its conduct constituted an unjustifiably high risk of harm
that is either known or so obvious that it should be known.

Plaintiff does not need to prove malice, ill will, or spite to prove willfulness.
If you find that punitive damages are appropriate, you must use reason in setting
the amount. Punitive damages, if any, should be in an amount sufficient to fulfill
their purposes but should not reflect bias, prejudice or sympathy toward any party.
In considering the amount of any punitive damages, consider the degree of
reprehensibility of the defendant's conduct, including whether the conduct that
harmed the plaintiff was particularly reprehensible because it also caused actual
harm or posed a substantial risk of harm to people who are not parties to this case.
You may not, however, set the amount of any punitive damages in order to punish
the defendant for harm to anyone other than the plaintiff in this case.

Under the CCRAA, you may assess punitive damages of up to $5,000 for each
violation of CCRAA.

Authority for Instruction 5.5 as modified for CCRAA:

Cal Civ. Code Section 1785.25 (a) and 1785.31 (a); Safeco Ins. Co. of America v.
Burr (2007) 75 USLW 4386, 127 S.Ct. 2201, 2208-2210, 167 L.Ed.2d 1045.

**IQ Data's Objection:** Same objection as above. *See Covarrubias v. Ocwen Loan Servicing, LLC*, No. EDCV17904FMOSPX, 2018 WL 5914240, at *3 (C.D. Cal. June 21, 2018) (evidence of financial condition and net worth is "information Plaintiff must have to request punitive damages."). Plaintiff is not presenting any evidence of IQ Data's financial condition or net worth at trial.

## P 1.  CAUSATION

Plaintiff need not show that any item of their damages was solely caused by any violation of the law.  Rather, plaintiff's burden of proof is to show that the violation, or violations, of law were a substantial factor (or factors) in bringing about plaintiff's damages.

Authority for P-25: *Philbin v. Trans Union Corp*, 101 F.3d 957, 970 (3d Cir. 1996).

**<u>IQ Data's Objection:</u>** Plaintiff bears the burden of proving that his damages were, in fact, caused by Defendant's violation. *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1122 (D. Nev. 2008).

P-5: Definition of Investigation, Fair Credit Reporting Act

The term 'investigation' under FCRA is defined as a detailed inquiry or systematic examination.   The meaning of 'investigation' under FCRA requires some degree of careful inquiry by consumer credit agencies as well as by furnishers of credit information.  It cannot be superficial.  An investigation under FCRA must be a reasonable investigation to satisfy the investigation requirement.

Authority for P-5: <u>Johnson v. MBNA America Bank, NA</u>, 357 F.3d 426, 430-31 (4th Cir. 2004); 15 USC Section 1681i.

**IQ Data's Objection:** Plaintiff's out of circuit case should not be given to the jury. The jury should be given the following instruction which is from the 9th Circuit:

The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the credit reporting agency's notice of dispute. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009).

P-10 Violations of Fair Debt Collection Practices Act

Plaintiff MONIQUE HESSELBROCK alleges that defendant IQ DATA INTERNATIONAL, INC. violated the Fair Debt Collection Practices Act in one or more of the following ways:

1. Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;
2. Attempting to collect on a debt with no legal or contractual basis for doing so; or,
3. Failing or refusing to validate the debt in spite of plaintiff's requests to do so.

Plaintiff has the burden of proving these violations.  Plaintiff can establish that IQ DATA INTERNATIONAL, INC. violated the Fair Debt Collection Practices Act by proving that it violated any one of the violations; plaintiff need not prove all three.

If you find that IQ DATA INTERNATIONAL, INC. violated one or more of the listed provisions of the Fair Debt Collection Practices Act, plaintiff is entitled to damages about which I have instructed you elsewhere.

**IQ Data's Objection:** Plaintiff's Amended Complaint does not include these allegations. In her Amended Complaint Plaintiff alleges the following:

> Paragraph 44: Under Cal. Civ. Code Section 1788.17, the requirements and prohibitions of the federal Fair Debt Collection Practices Act are incorporated into the California Fair Debt Collection Practices Act. I.Q. DATA INTERNATIONAL, INC., and DOES 1-25, Inclusive, all engaged in conduct proscribed by 15 U.S.C. Section 1692e (8), namely, "Communicating or threatening to communicate to any person credit information which is known, or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Each of these defendants violated 1692e (8) by communicating to the next entity in line credit information which was known to be false or which would have been discovered to have been false upon the slightest diligence. IQ DATA INTERNATIONAL and DOES 1-25, Inclusive, also violated provisions of both federal and California FDCPA by attempting to collect on a debt with no legal or contractual basis for doing so and by failing or refusing to validate the debt in spite of repeated requests to do so. Plaintiff reserves the right to allege other violations of the FDCPA/Rosenthal as the facts of the case unfold. In addition to violations of 1692e (8), defendants I.Q. DATA INTERNATIONAL, INC. and DOES 1-25, Inclusive, have violated sections 1692e and 1692f by continuing debt collection activities on accounts where the plaintiff has provided these defendants with ample proof that these were fraudulent accounts.

Plaintiff should not be allowed to expand her claims at this late hour and include various additional alleged violations that were not plead in her amended complaint.

P-11 Assignee of a Debt is Subject to the Same Claims and Defenses as The Original Creditor Who Assigned the Debt.

When a debt collector takes an assignment of an alleged debt from a creditor, the debt collector takes the assignment of the alleged debt subject to all claims and defenses that the alleged debtor had against the original creditor.

Here, the original creditor was JRK Properties.  The alleged debtor is Monique Hesselbrock.  The debt collector is IQ DATA INTERNATIONAL, INC.

*Burkhardt v. Bailey*, 260 Mich. App. 636, 680 N.W.2d 453, 462 (2004).

**<u>IQ Data's Objection</u>**: Plaintiff's proposed instruction misstates the law. The case cited by Plaintiff is a Michigan state court case that does not involve allegations under the FCRA, FDCPA, or California state law.

## 2.3  JUDICIAL NOTICE

The court has decided to accept as proved the fact of the Michigan Landlord-Tenant Act, Sections 9 and 10. You must accept this fact as true.

Sec. 9.

In case of damage to the rental unit or other obligation against the security deposit, the landlord shall mail to the tenant, within 30 days after the termination of occupancy, an itemized list of damages claimed for which the security deposit may be used as provided in section 7, including the estimated cost of repair of each property damaged item and the amounts and bases on which he intends to assess the tenant. The list shall be accompanied by a check or money order for the difference between the damages claimed and the amount of the security deposit held by the landlord and shall not include any damages that were claimed on a previous termination inventory checklist prior to the tenant's occupancy of the rental unit. The notice of damages shall include the following statement in 12 point boldface type which shall be at least 4 points larger than the body of the notice: "You must respond to this notice by mail within 7 days after receipt of same, otherwise you will forfeit the amount claimed for damages.".

Sec. 10.

Failure by the landlord to comply with the notice of damages requirement within the 30 days after the termination of occupancy, constitutes agreement by the landlord that no damages are due and he shall remit to the tenant immediately the full security deposit.

**IQ Data's objection**:  IQ Data is not a landlord and Plaintiff is also not calling the landlord to testify at trial. Therefore, there will be no evidence at trial regarding what the landlord sent and when it was sent. Further, the charges that are outstanding are not for "damages."

## 2.3 JUDICIAL NOTICE

The court has decided to accept as proved the fact of the Michigan Uniform Commercial Code, Section 440.2955. You must accept this fact as true.

## UNIFORM COMMERCIAL CODE (EXCERPT)
### Act 174 of 1962

**440.2955 Cancellation or termination of lease contract; discharge of executory obligations; material misrepresentation or fraud; rescission, rejection, or return of goods as bar to rights or remedies.**

Sec. 2A505.

(1) On cancellation of the lease contract, all obligations that are still executory on both sides are discharged, but any right based on prior default or performance survives, and the cancelling party also retains any remedy for default of the whole lease contract or any unperformed balance.

(2) On termination of the lease contract, all obligations that are still executory on both sides are discharged but any right based on prior default or performance survives.

(3) Unless the contrary intention clearly appears, expressions of "cancellation,""rescission," or the like of the lease contract may not be construed as a renunciation or discharge of any claim in damages for an antecedent default.

(4) Rights and remedies for material misrepresentation or fraud include all rights and remedies available under this article for default.

(5) Neither rescission nor a claim for rescission of the lease contract nor rejection or return of the goods may bar or be deemed inconsistent with a claim for damages or other right or remedy.

**History:** Add. 1992, Act 101, Eff. Sept. 30, 1992

**IQ Data's Objection:** This is not a "fact" as the jury instruction claims. The above has nothing to do with this case. IQ Data does not dispute that the landlord let Plaintiff out of her lease early as she alleges. The issue is, the landlord did not say that she would not obligated to pay for utilities while she was living there during her final month.

## IQ DATA'S PROPOSED INSTRUCTIONS AND PLAINTIFF'S OBJECTIONS

D-2 - Inaccurate or Incomplete Reporting

In order for an item on a credit report to be incomplete or inaccurate under the Fair Credit Reporting Act or the California Consumer Credit Reporting Agencies Act, it must be incorrect.

Plaintiff has the burden of proving that Defendant was reporting inaccurate information.

Cite: Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions § 12.10 (6th ed. 2008)

**Plaintiff's objections:** the standard in federal FCRA is "inaccurate, incomplete or cannot be verified".  15 U.S.C. Section 1681s-2 (b) (1) (E).  The standard under California CCRAA is "inaccurate or incompete". Cal. Civ. Code Section 1785.25 (a).  Defendant's instruction misstates the applicable standards.

**Plaintiff's Competing Instructions:** plaintiff's P-4 (standard under FCRA); plaintiff's P-6 (standard under CCRAA).

D-3- Duty of Reasonable Investigation

If a furnisher receives notice of a consumer's dispute from a consumer reporting agency and then verifies the disputed derogatory credit information without conducting a reasonable investigation, this violates the furnisher's duties under the FRCA and CCRAA.

A furnisher's obligation to conduct a reasonable investigation arises when it receives a notice of dispute from a consumer reporting agency. *It is from this notice that the furnisher learns the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation. The pertinent question is whether the furnisher's investigation was reasonable in light of what it learned about the nature of the dispute from the description in the consumer reporting agency's notice of dispute.* Determining the reasonableness of an investigation turns on the facts of the case. Among other things, you may consider whether it was reasonable for the furnisher to rely solely on the information provided by the consumer reporting agency, or whether additional steps to verify the accuracy of the information reported should have been taken.

Cite: Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions § 12.10 (6th ed. 2008)

**Plaintiff's Objections:** the italicized portion of the instruction is argumentative.

The instruction goes against recognized 9th Circuit authority, including *Gorman v. Wolpoff & Abramson,* 584 F. 3d 1147 (9th Cir. 2009), where the defendant debt collector argued that its investigation was strictly limited to the contents of the dispute notice (ACDV) from the credit bureau. In footnote 11 of the decision, the 9th Circuit disagreed: "In deciding that the notice determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the investigation once undertaken."

*Gorman* cites with approval *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004), in fact stating that the *Johnson* decision is "entirely persuasive". *Gorman,* 584 F. 3d at 1155. The *Johnson* decision forms the basis of plaintiff's P-5.

**Plaintiff's Competing Instruction:** plaintiff's P-5.

25

D-4- Willful Noncompliance and Knowing Noncompliance: FCRA and CCRAA

Plaintiff claims under the FCRA that Defendant willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information contained in the credit reports concerning Plaintiff. Plaintiff also claims under the CCRAA that Defendant knowingly failed to follow reasonable procedures to assure maximum possible accuracy of the information contained in the credit reports concerning Plaintiff.

Plaintiff has the burden of proof on each of these claims, and must proof each of the following elements:

First, Defendant willfully failed to comply with the Fair Credit Reporting Act or knowingly failed to comply with the CCRAA, and reported inaccurate or incomplete information;

Second, Plaintiff was injured; and

Third, the willful/knowing failure of Defendant to comply was the proximate cause of injury to Plaintiff.

Your verdict on either of these claims will be for Plaintiff if you find that Plaintiff proved that Defendant willfully failed to comply with the Fair Credit

26

Reporting Act or knowingly failed to comply with the CCRAA, that Plaintiff was injured, and that the failure to comply was a proximate cause of Plaintiffs injuries.

Your verdict on either of these claims will be for Defendant if you find that Plaintiff failed to prove a willful or knowing violation under the respective Act, that Plaintiff was injured, or that Plaintiffs injury was proximately caused by the willful or knowing violation.

Cite: Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions § 12.10 (6th ed. 2008)

**Plaintiff's Objections:**

1. The instruction mis-states the law for both FCRA and CCRAA.  The language in defendant's first paragraph is for a violation of 15 U.S.C. Section 1681e (b), which pertains exclusively to credit bureaus, not credit furnishers.  The law for credit furnishers is found at 15 U.S.C. Section 1681s-2 (b) for FCRA, and Cal. Civ. Code Section 1785.25 (a), for CCRAA.

2. Defendant is trying to conflate "knowingly" with "recklessly", which is not the standard.  The standard for willfulness is "recklessness", which is defined in plaintiff's 5.5:

   "You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was willful.  Conduct is willful under FCRA if defendant acted recklessly with respect to the rights of plaintiff. A furnisher's conduct is "reckless" if its conduct constituted an unjustifiably high risk of harm that is either known or so obvious that it should be known.
   "Plaintiff does not need to prove malice, ill will, or spite to prove willfulness."

3. The instruction also conflates FCRA with CCRAA, when in fact the two statutes have different elements.

   **Plaintiff's Competing Instructions:** plaintiff's 5.5 for FCRA and 5.5 for CCRAA correctly state the applicable standard for each statute.

28

D-5- Willfully and Knowingly Defined

The FCRA imposes liability on a furnisher in favor of the consumer for willfully failing to comply with a requirement imposed by the Act with respect to that consumer. The term "willfully" means an omission or failure to do an act voluntarily and intentionally, and with specific intent to fail to do something the law requires to be done, in other words, with a purpose either to disobey or disregard the Act.

The CCRAA imposes liability on a furnisher in favor of the consumer if the furnisher knew the reported information was inaccurate or incomplete and failed to comply with a requirement imposed by the Act with respect to that consumer. A furnisher acts knowingly if it is aware that the reported information is inaccurate or incomplete and fails to comply with any other requirement imposed by the Act. An act is not done knowingly if the furnisher acts or fails to act through ignorance, mistake, or accident.

You may consider evidence of Defendant's words, acts, or omissions, along with all the other evidence, in deciding whether Defendant acted willfully or knowingly.

Cite: Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions § 12.10 (6th ed. 2008)

29

**Plaintiff's Objections:** this instruction imposes a higher standard for a finding of willfulness, and also conflates "knowingly" with "recklessly", which is not the standard.

The standard for willfulness is "recklessness", which is defined in plaintiff's 5.5:

> "You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was willful.  Conduct is willful under FCRA if defendant acted recklessly with respect to the rights of plaintiff. A furnisher's conduct is "reckless" if its conduct constituted an unjustifiably high risk of harm that is either known or so obvious that it should be known.
>
> "Plaintiff does not need to prove malice, ill will, or spite to prove willfulness."

The instruction also conflates FCRA with CCRAA, when in fact the two statutes have different elements.

**Plaintiff's Competing Instructions:** plaintiff's 5.5 for FCRA and 5.5 for CCRAA correctly state the applicable standard for each statute.

Case 2:23-cv-02169-FLA-PVC   Document 138   Filed 11/01/24   Page 32 of 44   Page ID #:2969

D-6- Proximate Cause Defined

The term "proximate cause" means there must be a connection between Defendant's conduct and the injury complained of by Plaintiff. The act Plaintiff claims to have produced injury must have been a natural and probable result of Defendant's conduct.

Cite: Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions § 12.10 (6th ed. 2008).

31

**Plaintiff's Objections:** plaintiff's P-1 sets forth the standard for causation in FCRA cases.  The word "proximate" is confusing and not found in normal discourse among non-attorneys and jurors.

**Plaintiff's Competing Instruction:** plaintiff's P-1.

D-7

Plaintiff contends that the Defendant violated the Fair Debt Collection Practices Act by Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).

**Plaintiff's objections:** plaintiff alleged three violations, which are found in both the federal and the California Fair Debt Collection Practices Act:

4. Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;
5. Attempting to collect on a debt with no legal or contractual basis for doing so; or,
6. Failing or refusing to validate the debt in spite of plaintiff's requests to do so.

Defendant's instruction is argumentative and incomplete in that it only mentions one of the alleged violations.

**Plaintiff's Competing Instruction:** P-10.

D-8- Damages

If you find that Defendant acted negligently under the FCRA or CCRAA, then you may but are not required to award actual damages.

The FCRA and CCRAA do not presume actual damages; instead, Plaintiff must prove that she is entitled to actual damages. Actual damages may include damages for humiliation, mental distress, and injury to reputation or creditworthiness. Plaintiff must prove a causal relationship between the violation alleged and the loss of credit or some other harm.

**Plaintiff's Objections:**

The instruction is argumentative, placing repeated emphasis on what the plaintiff "must" prove.  The language used in this instruction suggests a higher burden of proof than a preponderance of the evidence.

**Plaintiff's Competing Instructions:** plaintiff's 5.1 is taken directly from the Ninth Circuit Model Instructions.  Plaintiff's 5.2 (damages generally) and 5.5 (punitive damages specifically) are modeled after the same-numbered instructions in the Ninth Circuit Model Instructions.  Plaintiff's P-10 provides the instruction on the elements and the damages for violations of the Fair Debt Collection Practices Act.

D-9- Punitive Damages—Bifurcated Trial (First Phase)

If you find for Plaintiff that Defendant willfully violated the FCRA or knowingly violated the CCRAA, you must decide whether that conduct justifies an award of punitive damages. The amount, if any, of punitive damages will be an issue decided later.

The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff. Plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that Defendant's conduct that harmed Plaintiff was malicious, oppressive or in reckless disregard of Plaintiff's rights. Conduct is "malicious" if it is accompanied by ill will, or spite, or if it is for the purpose of injuring Plaintiff. Conduct is in "reckless disregard of Plaintiff's rights" if, under the circumstances, it reflects complete indifference to Plaintiff's safety or rights, or if Defendant acts in the face of a perceived risk that its actions will violate Plaintiff's rights under the law. An act or omission is "oppressive" if Defendant injures or damages or otherwise violates the rights of Plaintiff with unnecessary harshness or severity, such as by misusing or abusing

authority or power or by taking advantage of some weakness or disability or misfortune of Plaintiff.

Cite: Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions § 12.10 (6th ed. 2008).

**Plaintiff's Objections:** in FCRA and CCRAA cases, there is no bifurcation of the punitive damages phase of the trial.  Bifurcation is specific to tort actions in California state court.  There is no FCRA or CCRAA authority to the contrary.

Also, defendant's instruction misstates the applicable standard and attempts to impose upon plaintiff a burden of proving malice.  The standard is  willfulness, which is defined in plaintiff's 5.5:

> "You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was willful.  Conduct is willful under FCRA if defendant acted recklessly with respect to the rights of plaintiff. A furnisher's conduct is "reckless" if its conduct constituted an unjustifiably high risk of harm that is either known or so obvious that it should be known.
>
> "Plaintiff does not need to prove malice, ill will, or spite to prove willfulness."

The instruction also conflates FCRA with CCRAA, when in fact the two statutes have different elements.

**Plaintiff's Competing Instructions:** plaintiff's 5.5 for FCRA and 5.5 for CCRAA correctly state the applicable standard for each statute.

39

D-10- Punitive Damages—Reckless Violation of FCRA or CCRAA

Under the Fair Credit Reporting Act and Consumers Credit Reporting Agencies Act, a furnisher may be held liable for punitive damages if you find that its conduct constitutes a reckless violation of either Act. A furnisher's conduct associated with an investigation is "reckless" if its conduct constituted an unjustifiably high risk of harm that is either known or so obvious that it should be known.

Cite: Kevin F. O'Malley *et al.*, Federal Jury Practice and Instructions § 12.10 (6th ed. 2008).

**Plaintiff's Objections:** defendant is offering confusing and contradictory instructions on "willfulness", which will only confuse the jury.  Reading defendant's jury instructions either individually or as a whole does not provide any clear instruction to the jury as to how to decide the key issues.

Defendant's instruction also implicitly places the burden of proving malice on the plaintiff, since this is not excluded as a burden of proof, as it is in plaintiff's instructions.

> "You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was willful.  Conduct is willful under FCRA if defendant acted recklessly with respect to the rights of plaintiff. A furnisher's conduct is "reckless" if its conduct constituted an unjustifiably high risk of harm that is either known or so obvious that it should be known.
>
> "Plaintiff does not need to prove malice, ill will, or spite to prove willfulness."

The instruction also conflates FCRA with CCRAA, when in fact the two statutes have different elements.

**Plaintiff's Competing Instructions:** plaintiff's 5.5 for FCRA and 5.5 for CCRAA correctly state the applicable standard for each statute.

D-11 - Defendant claims that it is not responsible for Plaintiff's damages because of the acts of landlord, Plaintiff, and/or credit reporting agencies. To avoid legal responsibility for the harm, Defendant must prove all of the following: 1. That the third party's occurred after the conduct of Defendant; 2. That a reasonable person would consider the third-party's conduct a highly unusual or an extraordinary response to the situation; 3. That Defendant did not know and had no reason to expect that the third-party would act in a negligent or wrongful manner; and 4. That the kind of harm resulting from the third-party's conduct was different from the kind of harm that could have been reasonably expected from Defendant's conduct.

**Plaintiff's Objection:** this instruction has nothing to do with the facts of this case, and the lack of a legal citation suggests there is no legal authority for this instruction. IQ and IQ alone performed the credit reporting, and IQ alone performed the investigation following plaintiff's disputes. There is no law supporting IQ's effort to shunt the blame off on the landlord in this case. Under Michigan Law, the assignee of a debt takes the debt subject to all claims and defenses that the alleged debtor had against the assignor. *Burkhardt v. Bailey*, 260 Mich. App. 636, 680 N.W.2d 453, 462 (2004). Here, the assignee is IQ DATA INTERNATIONAL, INC. and the assignor is JRK Properties.